# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **KARIM L. GEORGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:10-CV-02136-RWS-NAB** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of

Michael Astrue ("Defendant") denying the application for a period of disability and disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 - 435, and the

application for supplemental security income under Title XVI, 42 U.S.C. §§ 1381 - 1383b, filed

by Karim L. George ("Plaintiff"). [Doc. 1]. Plaintiff filed a Brief in Support of the Complaint.

[Doc. 15]. Defendant filed a Brief in Support of the Answer. [Doc. 19]. Plaintiff filed a Reply.

[Doc. 18]. This matter was referred to the undersigned United States Magistrate Judge pursuant

to 28 U.S.C. § 636(b)(1). [Doc. 12].

## I.
## PROCEDURAL HISTORY AND
## FACTUAL BACKGROUND

Plaintiff filed his applications for benefits on March 27, 2008.[1]  His claims were denied at

the initial determination level and Plaintiff filed a timely request for a hearing before an

Administrative Law Judge ("ALJ").  (Tr. 6).  The ALJ held a hearing and denied the claim in a

written decision dated January 16, 2010.  (Tr. 25-55); (Tr. 10-21).  The Appeals Council denied

---

[1] Summaries of Plaintiff's applications are included in the administrative record.  *See* (Tr. 105-15).

Plaintiff's request for review. (Tr. 1-5). As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## EVIDENCE BEFORE THE ALJ

Plaintiff's administrative hearing was held on November 10, 2009. (Tr. 25). Plaintiff was present and represented by counsel. Plaintiff testified, as well as vocational expert, Delores Gonzalez ("VE").

### A.    Testimony at the Hearing

### 1. Plaintiff's Testimony

Plaintiff testified that he is forty-six years old. (Tr. 30). He stated that he has never been married and has no children. *Id.* Plaintiff stated that he completed three years of college. (Tr. 31). Plaintiff last worked part-time, two months prior to the hearing date. (Tr. 33). Plaintiff testified that he has worked part-time jobs as a janitor and a laborer since 1994. (Tr. 34). Plaintiff has worked for more than ten (10) employers, in addition to several temporary services solely performing janitorial and labor work. (Tr. 35-38).

Plaintiff testified that the impairments that prevent him from working are diabetes and bipolar disorder. (Tr. 39). Plaintiff also testified that leg pains and trouble resting before a job impact his working. (Tr. 41). Plaintiff stated that he is not on insulin, but takes medication for diabetes. *Id.* Plaintiff said could not remember the names of the medications that he is taking for the diabetes. *Id.* Plaintiff testified that he takes medication for high blood pressure. *Id.*

Plaintiff testified that he currently takes medication for depression and anxiety. (Tr. 41). Plaintiff said that the medication causes dizziness, blurred vision, and the need to rest. (Tr. 42). Plaintiff's testimony included a denial of current use of alcohol, cigarettes or illegal drugs, but he acknowledged that he had last used cocaine in 2007. (Tr. 42-43). Plaintiff also testified that he

hears voices. (Tr. 49).

Plaintiff testified that he is able to drive, perform yard work, vacuum, iron, wash dishes, and do laundry. (Tr. 43-44). He also stated that he does small home repair around the house. (Tr. 44). Plaintiff also stated that he played pool and put together puzzles. *Id.* Plaintiff testified that he can walk for an hour without resting and stand for twenty minutes. (Tr. 45). Plaintiff testified that he has no problem sitting and that he can lift fifty pounds at a time. *Id.*

Plaintiff testified that he lost his last job, because when he was in a hurry, he missed cleaning or removing the trash in some of the offices in the time that he was allowed to do his job assignments. (Tr. 46). Plaintiff also stated that he lost other jobs, because he was required to complete his daily duties in a certain time period. (Tr. 48).

### 2. Testimony of Vocational Expert Delores Gonzalez

The VE testified that Plaintiff's past job as a Cleaner/Janitor was heavy unskilled work, his job as a Warehouse Worker and Hand Packager were medium unskilled work; and his job as a Production Line Assembler was classified as light unskilled work. (Tr. 51). The ALJ posed three hypotheticals to the VE. (Tr. 51-52).

The first hypothetical posed by the ALJ asked whether an individual of Plaintiff's education, training, and work experience would be able to perform Plaintiff's past work with the following restrictions: (1) no exertional limits; (2) ability to understand, remember, and carry out simple instructions; (3) ability to demonstrate adequate judgment to make simple work related decisions; (4) ability to adapt routine simple work changes; and (5) ability to perform repetitive work according to set procedure sequence and pace. (Tr. 51). The VE responded that such an individual would be able to perform Plaintiff's past work. *Id.*

In the second hypothetical, the ALJ proposed the same qualifications as listed in the first hypothetical with the additional restrictions that the individual would only be able to maintain

concentration and attention for two hour segments over an eight hour period and could perform work at a normal pace without production quotas. (Tr. 51). The VE responded that all of Plaintiff's past jobs required production quotas. (Tr. 52). The ALJ then asked if there were "other jobs." The VE then testified that the jobs available for the restrictions identified in hypothetical two were light unskilled positions- school bus monitor, ticket taker, and arcade attendant. *Id.*

In the third hypothetical, the ALJ asked the VE whether there would be jobs available for an individual with the restrictions as listed in hypothetical two, but with the added restriction that the individual could not maintain concentration and attention for two hour segments over an eight hour period. (Tr. 52). The VE responded that no jobs would be available with the restrictions identified in hypothetical three. *Id.*

**B.      Medical Records**

The Plaintiff sought mental health treatment from BJC Behavioral Health ("BJC") on a consistent basis between 1997 and 2008. Between 2001 and 2008, Plaintiff received an annual assessment from BJC.

In November 1998, Plaintiff was moved from Dr. Schwarz to Dr. Mikolajczak. (Tr. 365). Plaintiff was diagnosed with Major Depression, recurrent with Psychosis Drug Abuse. *Id.* On August 16, 1999, Plaintiff's Individual and Treatment and Rehabilitation Plan stated that Plaintiff's primary diagnosis was schizophrenia chronic (undifferent type) and Plaintiff's GAF was 55. (Tr. 360).

On August 22, 2000, Plaintiff received a Psychological Clinical Assessment from BJC. (Tr. 338-341). It was noted that Plaintiff had a diagnosis of Schizophrenia and that he was compliant with appointments with Dr. Mikolajczak. (Tr. 341). At the time, Plaintiff had been sober for five years. (Tr. 341). Plaintiff's GAF score was listed as 55. (Tr. 339).

On August 21, 2001, Plaintiff received an Annual Assessment from BJC.  (Tr. 349-352).
Plaintiff was diagnosed with schizophrenia and a GAF score of 55.  (Tr. 351).

On February 20, 2002, Plaintiff received a Semi-Annual Assessment from BJC.  (Tr.
353-354).  Plaintiff received a diagnosis of Schizophrenia and a GAF of 60.  (Tr. 354).  On
August 27, 2002 Plaintiff received an Annual Assessment from BJC.  (Tr. 346-348).  Plaintiff
had a diagnosis of schizophrenia and a GAF of 55.  (Tr. 347).  The assessment was completed by
Karen Yount and Judy Huag, MSW-LCSW. (Tr. 348).

On September 11, 2003, Plaintiff's annual assessment from BJC reflected a diagnosis of
schizophrenia and a GAF score of 50.   (Tr. 345).  The assessment was completed by Susan
Toelle, MSW, LCSW.  (Tr. 345).  On March 18, 2005, Plaintiff received an annual assessment
from BJC, which included a diagnosis of Schizophrenia and a GAF Score of 50. (Tr. 343).  The
assessment was completed by Susan Toeller. (Tr. 343).

On August 2, 2006, Plaintiff visited BJC for his annual Psychological/Clinical
Assessment completed by Susan Toelle.  (Tr. 303- 310).  It was noted that Dr. Mikolajczak
diagnosed Plaintiff with schizoaffective disorder and a GAF of 50.  (Tr. 305).  Plaintiff reported
employment with temporary services, but he was seeking full time employment.  *Id.*  Plaintiff
reported that his temporary work was eight hours per day.  *Id.*  Plaintiff did not have any
complaints during the assessment and stated, "I'm really quite happy."  (Tr. 306).  It was also
noted that Plaintiff owned a vehicle.  (Tr. 305).

On November 30, 2006, Plaintiff visited John C. Murphy Health Center for diabetic care
and hypertension.  (Tr. 239-241).  Plaintiff was given medication and ordered to follow-up for
blood pressure check within one week.  (Tr. 241)  On December 13, 2006, Plaintiff visited John
C. Murphy Health Center with complaints of hoarseness, painful swallowing, and sore tongue.
(Tr. 236-238).  Plaintiff received a prescription for medication and was told to return as needed

or within three months.  (Tr. 238).

On May 21, 2007, Plaintiff visited the emergency room at Metropolitan St. Louis Psychiatric Center.  (Tr. 226-230).  Plaintiff reported that his mood symptoms were worsened by his drug problem and he had been doing okay until a recent drug relapse.  (Tr. 226).  Plaintiff had not taken his medication for approximately one month.  *Id.*  Dr. William Ozell diagnosed Plaintiff with mood disorder and cocaine dependence with a GAF range of 50-60.  (Tr. 229).  Plaintiff declined admission.  (Tr. 226).

On July 25, 2007, Plaintiff visited BJC for his annual Medical and Psychiatric Assessment.  (Tr. 317-320).  At this visit, Dr. Ai-Ling Wu, a psychiatrist, evaluated Plaintiff.  Dr. Wu diagnosed Plaintiff with schizophrenia, disorganized type, diabetes, and hypertension.  (Tr. 319).  Dr. Wu noted that Plaintiff had a history of marijuana and cocaine abuse.  *Id.*  Plaintiff reported that he was happy with his current medications.  *Id.*  Plaintiff needed a new psychiatrist, because his doctor retired.  (Tr. 317).

Plaintiff was voluntarily admitted to the Metropolitan St. Louis Psychiatric Center between October 26, 2007 and October 30, 2007.  (Tr. 215-225).  Dr. Muhammad Baber, a psychiatrist assessed Plaintiff at his admission and discharge.  (Tr. 219, 223).  Upon admission, Plaintiff reported that he currently "binge[d]" on cocaine on weekends.  (Tr. 217).  Plaintiff reported that he had increased symptoms of "depression, hopelessness, helplessness, worthlessness, poor sleep, increased anxiety manifested by shakiness and palpitations, fear of dying, fear of getting out at work, and . . . thoughts of killing himself."  *Id.*  Plaintiff also reported auditory hallucinations.  *Id.*  Plaintiff was admitted with a initial diagnosis of bipolar affective disorder mixed with psychosis and cocaine dependence and his GAF was assessed at 20.  (Tr. 222-223).  His urine drug screen tested positive for cocaine.  (Tr. 223).  At the time of discharge, Dr. Baber found that Plaintiff had schizophrenia, paranoid type with a GAF of 65.

(Tr. 218). Plaintiff denied any thoughts of hurting himself or anyone else. *Id.* Plaintiff reported

that he was able to ignore the occasional auditory hallucinations. *Id.*

On November 1, 2007, Plaintiff received a Psychosocial Clinical Assessment from Ms.

Toelle. (Tr. 311-316). Plaintiff reported that he no longer worked at Shop-n-Save. (Tr. 311).

Plaintiff denied suicidal or homicidal ideation. (Tr. 313). Dr. Wu diagnosed Plaintiff with

schizophrenia, disorganized type with a GAF of 55. *Id.*

On December 13, 2007, Plaintiff visited Dr. Rao Kosuri, a psychiatrist. (Tr. 328).

Plaintiff reported hearing voices, feeling nervous at night, and being without a job. On February

12, 2008, Plaintiff was assessed by Dr. Kosuri, as being schizophrenic and GAF was listed as 60.

(Tr. 325-328).

On April 25, 2008, Plaintiff went to DePaul Health Center's emergency room with

complaints of chest pain. (Tr. 250). Dr. Arun Venkat assessed Plaintiff as having chest pain

syndrome and requested that Plaintiff be admitted. *Id.* Plaintiff refused admission. *Id.* Plaintiff

was given calcium blockers and scheduled for a stress test in the doctor's office. *Id.*

On May 1, 2008, Dr. Judith McGee, a psychologist, completed a Mental Residual

Functional Capacity Assessment for Plaintiff. (Tr. 281-295). In the Assessment, Dr. McGee

found that Plaintiff was moderately limited in the ability to understand and remember detailed

instructions and the ability to carry out detailed instructions. (Tr. 281). Dr. McGee assessed

Plaintiff as having moderate difficulties in maintaining concentration, persistence, or pace. (Tr.

292). Dr. McGee opined that "if abstinent and compliant, [Plaintiff] retains the ability for simple

work, making simple decisions, and adapting to routine changes." (Tr. 283, 294).

On June 10, 2008, Dr. Kosuri evaluated Plaintiff. (Tr. 400). At that visit, Plaintiff had

no complaints, but noted that Plaintiff did not have a job. Id. Plaintiff's medications were

continued. *Id.*

On August 28, 2008, Dr. Kosuri, completed a Mental Medical Source Statement regarding Plaintiff. (Tr. 296-299). In the Statement, Dr. Kosuri noted that Plaintiff had marked limitations in (1) coping with normal work stress, (2) accepting instructions and responding to criticism, (3) making simple work-related decisions, (4) maintaining attention and concentration for extended period, (5) performing at a consistent pace without an unreasonable number and length of rest periods, and (6) working in coordination with others. (Tr. 296-297). Dr. Kosuri listed Plaintiff's diagnosis as schizophrenia. (Tr. 299).

On October 7, 2008, Plaintiff visited Dr. Kosuri. (Tr. 401). Plaintiff reported doing well and had no complaints. *Id.* Plaintiff's medications were continued. *Id.*

On October 20, 2008, Plaintiff visited the John C. Murphy Health Center for a routine follow-up. (Tr. 414-415). At this visit, Plaintiff was evaluated by Dr. Walter Griffin, who noted that Plaintiff had been "noncompliant" with his medication for nearly a year. (Tr. 414). Dr. Griffin prescribed Plaintiff medication for his hypertension. (Tr. 414).

On November 6, 2008, Dr. Kosuri met with Plaintiff and issued a diagnosis of schizophrenia with a GAF of 65.

Plaintiff visited Barnes-Jewish Hospital's Emergency Department for chest pains on February 20, 2009. (Tr. 421-482). Plaintiff admitted to cocaine use within the previous two weeks and failure to take medication for more than two weeks. (Tr. 422). Plaintiff received a diagnosis of possible gastroesophageal reflux disease. (Tr. 442). It was recommended that Plaintiff have a stress test, but Plaintiff refused and was discharged against medical advice the next day. (Tr. 442).

On June 29, 2009, Plaintiff visited John C. Murphy Health Center for a check of his hypertension. (Tr. 411-413). At this visit, Dr. Griffin noted that Plaintiff had been without his medication for a couple of months. (Tr. 411). Plaintiff was given prescriptions for his

hypertension and dermatitis and told to schedule a follow up appointment within four weeks. (Tr. 412).

### III.
### ALJ DECISION

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 13, 2013 and that Plaintiff has not engaged in substantial gainful employment since November 20, 2007. (Tr. 12). The ALJ found that the Plaintiff had the severe impairments of schizophrenia and history of cocaine and marijuana abuse. (Tr. 13). Further, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ found that the Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the non-exertional limitations that he work without production quotas at a normal pace, maintain concentration in two-hour segments over an eight hour workday, and adapt to simple work changes. (Tr. 14). The ALJ determined that Plaintiff is unable to perform any past relevant work. (Tr. 19). The ALJ concluded, however, that Plaintiff could perform the jobs of school bus monitor, ticket taker, and arcade attendant, which exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 20).

### IV.
### LEGAL STANDARD

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). Under the Social

Security Act, the Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). The burden of persuasion to prove disability remains with the claimant throughout the evaluation process. *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (citation omitted); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

In this sequential analysis, first, the claimant cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." *Id*. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.[2] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his or her Residual Functional Capacity ("RFC"). *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008). *See also Eichelberger*, 390 F.3d at 590-91; *Masterson*, 363 F.3d at 737. RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. §§ 404.1520(f), 416.920(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step V.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

---

[2] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled.

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617; *Guillams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004) (citing *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987).

The factual findings of the ALJ are conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g). The district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980); *Cruse v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989). Additionally, an ALJ's decision must comply "with the relevant legal requirements." *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

**V.**
**DISCUSSION**

Plaintiff raises two points of error in arguing that the ALJ's decision is not supported by substantial evidence. First, Plaintiff argues that the ALJ improperly weighed the opinion evidence provided by Plaintiff's treating psychologist, Dr. Kosuri, and state agency psychologist,

Judith McGee.  Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  The undersigned will address each point in the order presented.

## A.  Medical Opinion Evidence

Plaintiff argues that the ALJ failed to evaluate the medical opinion evidence in a legally sufficient manner and failed to properly weigh the medical opinion evidence provided by his treating psychologist, Dr. Kosuri, and state agency psychologist, Judith McGee.

### 1.  Dr. Kosuri's Opinion

Plaintiff first argues that the ALJ erred in weighing the opinion of Dr. Kosuri, Plaintiff's treating psychiatrist.[3]  Plaintiff contends that Dr. Kosuri's August 2008 opinion was entitled to controlling weight.

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it.  *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).  A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007).  A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2);  SSR 96-2p; *see also Hacker*, 459 F.3d at 937.  The Eighth Circuit has also upheld an ALJ's decision to discount or disregard a treating physician's opinion where other medical assessments in the record are supported by better or more thorough medical evidence, *see Rogers v. Chater,* 118 F.3d 600, 602 (8th Cir. 1997), or where a treating physician renders inconsistent opinions, *see Cruze v. Chater,* 85 F.3d 1320,

---

[3]Defendant does not dispute that Dr. Kosuri qualifies as a treating physician.

1324-25 (8th Cir. 1996). *See also Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) ("A treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions.") (citation omitted).

When given controlling weight, the ALJ defers to a treating physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). "A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *Ellis*, 392 F.3d at 994; *see also* 20 C.F.R. § 404.1527(e).

Here, the ALJ found that Dr. Kosuri's opinion was inconsistent with his own treatment notes and assessments of Plaintiff. Specifically, the ALJ noted that Dr. Kosuri's opinion is "very inconsistent" with his assessment that Plaintiff had a GAF level of 65, and that Dr. Kosuri's treatment notes "do not reflect an individual as limited as the August 2008 assessment would suggest." (Tr. 18). The ALJ also noted that Plaintiff's medications had not been changed.

Regarding the ALJ's finding that Dr. Kosuri's GAF assessment is inconsistent with his August 2008 opinion, the undersigned finds that substantial evidence does not support this finding.

"The GAF is a numerical assessment between zero and 100 that reflects a mental health examiner's judgment of the individual's social, occupational, and psychological function." *Hurd v. Astrue*, 621 F.3d 734, 736 (8th Cir. 2010) (*citing Kluesner v. Astrue*, 607 F.3d 533, 535 (8th Cir. 2010). A GAF score of 65 reflects "[s]ome mild symptoms (e.g. depressed mood or mild

insomnia) or some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." *Kohler v. Astrue*, 546 F.3d 260, 263 (2nd Cir. 2008) (*quoting* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)) (alterations in original) ; *see also Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (same).

If Plaintiff's GAF level was consistently recorded at or near 65, or was determined to be at or near 65 on the same day or near the same day as the August 2008 opinion, the undersigned would agree that the GAF score is inconsistent with Dr. Kosuri's August 2008 opinion. However, a complete review of the record reveals that the GAF score of 65 referenced by the ALJ was recorded on November 6, 2008, *see* (Tr. 401)*,* and that in five tests between July 2007 and November 2008, Plaintiff's GAF varied between 55 and 65.[4] "According to the Diagnostic and Statistical Manual of Mental Disorders (DSM–IV), a GAF of 51 to 60 indicates moderate symptoms." *Martise v. Astrue*, 641 F.3d 909, 919 n.6 (8th Cir. 2011) (citation omitted).  Dr. Kosuri's August 2008 opinion noted only moderate and marked levels of limitations.  Dr. Kosuri did not note a single extreme limitation in his opinion.  In fact, the definition of marked limitation on the form expressly notes that a marked limitation is more than moderate, but *less than extreme*.  *See* (Tr. 296).

In assessing Dr. Kosuri's opinion, the ALJ did not note Plaintiff's fluctuating GAF, rather, he drew a comparison only to Plaintiff's most recent GAF score, which was recorded nearly three months after Dr. Kosuri's August 2008 opinion.  It is certainly possible, especially given Plaintiff's fluctuating GAF score history, that Plaintiff's GAF level changed in those three months.  The ALJ is not entitled to or qualified to say that such a change did or did not occur.

---

[4]Plaintiff's GAF was recorded at 40 on March 20, 2010, which further indicates that his GAF is not constant.

*See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) ("An administrative law judge may not draw upon his own inferences from medical reports").  Without some medical evidence, the undersigned cannot say that Dr. Kosuri's August 2008 opinion is inconsistent with a GAF level that was recorded three months later.  The undersigned therefore finds that this is not a sufficient basis to discredit Dr. Kosuri's opinion.     The ALJ also found that Dr. Kosuri's opinion is inconsistent with his own treatment records on Plaintiff.  The ALJ cited to two specific treatment records.  First, the ALJ cites to a June 10, 2008 treatment note in which Dr. Kosuri noted that Plaintiff had "no complaints" and described himself as being "okay."  Dr. Kosuri also assessed Plaintiff as "stable."  Next, The ALJ cites an October 7, 2008 treatment record in which Dr. Kosuri noted that Plaintiff was "doing well" and had no complaints.  Dr. Kosuri also noted that Plaintiff denied any delusions or hallucinations.

As noted above, a treating source's opinion may be discounted or disregarded where the source renders inconsistent opinions.  *See Cruze,* 85 F.3d at 1324-25*; Hacker*, 459 F.3d at 937.  However, the undersigned finds no inconsistencies in Dr. Kosuri's opinion and his treatment records.  Although Dr. Kosuri made notations that Plaintiff had no complaints on certain visits, and described himself as being "okay" and "doing well," the undersigned believes the ALJ improperly determined that these notations are inconsistent with Dr. Kosuri's opinion.  First, the undersigned notes that Dr. Kosuri did not make those statements; he merely recorded Plaintiff's statements.  Second, Plaintiff is a chronic schizophrenic, and the Eighth Circuit has expressed a reluctance to accept similar statements as evidence of an inconsistency between a doctor's treatment notes and an opinion.  *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (finding that indications in the medical record that a chronic schizophrenic claimant was "doing well" is not inconsistent with doctor's opinion that the claimant's work skills were seriously

deficient); *see also Gude v. Sullivan*, 956 F.2d 791, 794 (8th Cir. 1992) (a notation that the claimant "continues to do well," may well mean that the claimant was "doing well" for someone with the claimant's condition). Furthermore, a doctor's notation that a claimant is "doing well" during treatment is not indicative of the claimant's ability to do work related activities, which is what Dr. Kosuri's August 2008 opinion addressed. *See Hutsell v*. (*citing Gude v*. *Sullivan*, 956 F.2d 791, 794 (8th Cir.1992) (ALJ "erroneously relied too heavily on indications in the medical record that [the claimant] was 'doing well' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.").

Further, the ALJ concluded that Dr. Kosuri's characterization of Plaintiff as "stable" on June 10, 2008 is inconsistent with the limitations set forth in the August 2008 opinion. The undersigned disagrees. Dr. Kosuri's August 2008 opinion does not state that Plaintiff is unstable or that he has never been stable; such a statement would indeed be inconsistent with his treatment notes. Since the August 2008 opinion lacks any such explicit inconsistent statement, the only way the ALJ could conclude that the opinion is inconsistent with the treatment notes is to imply that "stable," as used by Dr. Kosuri in the treatment notes, means that Plaintiff was able to function at a level higher than that indicated in the August 2008 opinion. The record does not support such a conclusion. The term "stable" could easily mean that Plaintiff's condition was stable as compared to an average chronic schizophrenic, or that his condition was stable as compared to the last time Dr. Kosuri treated him. *See Gude*, 956 F.2d at 794 (noting that "doing well" may well mean that the claimant was "doing well" for someone with the claimant's condition; also noting that a "stabilized" does not mean that a claimant's symptoms have gone away or that they do not exist). There is nothing in the record from which the undersigned can

determine what the characterization of "stable" meant and the undersigned is neither qualified to nor entitled to venture to presume what Dr. Kosuri's notation of "stable" means. Without any such evidence, the record lacks any indication that the limitations identified by Dr. Kosuri in August 2008 are inconsistent with his characterization of Plaintiff's condition as "stable" two months earlier.

The ALJ also noted that, under Dr. Kosuri's care, Plaintiff's medication "remained essentially unchanged." The ALJ concluded that the lack of alteration to Plaintiff's medication regiment suggested that the prescribed medications were working as expected and had stabilized Plaintiff's condition. The ALJ cites to no medical evidence that supports this assertion. The law is clear that "[a]n administrative law judge may not draw upon his own inferences from medical reports." *Nevland*, 204 F.3d at 858; *see also Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.") (*citing Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Here, the ALJ clearly drew upon his own inferences in determining that a lack of changes in prescribed medication indicated that Plaintiff's medication was working as expected and that it stabilized Plaintiff's condition. Dr. Kosuri never opined or suggested that Plaintiff's medication was working as expected or that the medication stabilized his condition. The undersigned therefore finds that this conclusion is not supported by substantial evidence.

Because the ALJ discredited Dr. Kosuri's opinion for insufficient reasons, the undersigned recommends that this matter be remanded and that the ALJ re-evaluate Dr. Kosuri's opinion in a manner consistent with the regulations and this opinion. The undersigned expresses no opinion as to whether Dr. Kosuri's opinion should be granted controlling weight; the undersigned finds only that the ALJ did not appropriately weigh Dr. Kosuri's opinion. On

remand, if the ALJ finds that Dr. Kosuri's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the opinion should be granted controlling weight on the issues of the nature and severity of Plaintiff's condition. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Ellis*, 392 F.3d at 995; SSR 96-2p. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

### 2. Judith McGee's Opinion

Plaintiff argues that the ALJ granted great weight to the opinion of a state agency psychologist**,** Judith McGee ("McGee")**,** but failed to evaluate the opinion.

"The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998).[5] Nevertheless, when an ALJ considers findings of a state agency medical or psychological consultant, the ALJ should evaluate the findings using relevant factors identified in 20 C.F.R. § 416.927(a)-(e) and 20 C.F.R. §404.1527(a)-(e), such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions." *See* 20 C.F.R. § 416.927(f)(2)(ii); 20 C.F.R.

---

[5]*But see* SSR 96-6p, 1996 WL 374180, at *2 ( "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.")

§404.1527(f)(2)(ii).  The ALJ must explain the weight given to the opinions of state agency medical and psychological consultants.  SSR 96–6p, at *2.

Here, the ALJ did not specify or explain the weight given to McGee's opinion; rather, the ALJ merely noted that the opinion is consistent with his decision and the record as a whole. Providing an explanation of the weight given to a state agency consultant opinion is not discretionary; the Social Security Rulings mandate that such an explanation be provided.  *See* SSR 96–6p, at *2.  Without any explanation as to the weight given to the opinion, the undersigned cannot find that the ALJ properly weighed and considered McGee's opinion. Therefore, any reliance on McGee's opinion is not supported by substantial evidence.

The undersigned therefore recommends that, on remand, the ALJ re-evaluate McGee's opinion in a manner consistent with this decision and the regulations.  The ALJ shall provide an explanation of the weight given McGee's opinion."  *See* 20 C.F.R. § 416.927(f)(2)(ii); 20 C.F.R. §404.1527(f)(2)(ii); SSR 96–6p.

### 3. Plaintiff's RFC

Plaintiff argues that the ALJ failed to provide a narrative discussion of how the medical evidence supported each conclusion in the RFC, and that the RFC determination is not supported by substantial evidence.

The ALJ concluded that Plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can work at a normal pace but without production quotas; he can maintain concentration in two hour segments over an eight hour workday; and he can adapt to simple work changes."  (Tr. 14).  Plaintiff challenges this RFC determination, arguing that the ALJ failed to include a narrative discussion describing how

the evidence supports the RFC, and that the RFC is not supported by substantial evidence.

RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[6] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 *7. The ALJ must also explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. *Id*. Here, the ALJ provides a narrative summary of the medical evidence in the record; however, the ALJ does not indicate how the medical evidence he summarizes supports

---

[6]A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

the limitations he identifies in his RFC determination. The RFC identified only three limitations, and the ALJ cites to no medical evidence to support either of the limitations. With regards to his finding that Plaintiff's concentration is limited to two hour segments, the ALJ cites to no medical evidence to support this conclusion. The record contains evidence from multiple sources that indicates that Plaintiff's ability to maintain concentration is limited, but none of the sources provides a time frame for which Plaintiff can consistently concentrate. Although Defendant argues that the ALJ relied on the Plaintiff's Function Report in concluding that Plaintiff can concentrate in two hour segments,[7] the ALJ's decision does not reflect such a reliance. The ALJ did mention the Function Report in the decision, however, he did not cite to any evidence contained in the Function Report related to Plaintiff's ability to concentrate. Furthermore, the Function Report does not constitute medical evidence.

Similarly, the ALJ cites to no evidence that supports his conclusion that Plaintiff can work at a normal pace but cannot meet production quotas. Dr. Kosuri noted that Plaintiff was moderately and markedly limited in categories related to concentration, persistence, and pace, and Dr. McGee concluded that Plaintiff has moderate difficulties in maintaining concentration, persistence, and pace. However, the ALJ does not indicate that he relied on either of these opinions in concluding that Plaintiff could work at a normal pace. SSR 96-8p requires the ALJ to cite specific medical and nonmedical facts and describe how the evidence supports each conclusion. *See* SSR 96-8p. The ALJ's RFC decision fails to do so. A narrative summary of the medical evidence without an explanation of how the evidence supports the conclusions does not satisfy the requirements set forth by SSR-96-8p.

---

[7]The Function Report was completed by Amanda Donaldson on behalf of Plaintiff. (Tr. 193-201).

Furthermore, in light the undersigned's recommendation that Dr. Kosuri's opinion be re-evaluated, Plaintiff's RFC should also be reconsidered. After evaluating Dr. Kosuri's opinion in a manner consistent with this decision, the ALJ should re-evaluate Plaintiff's RFC, setting forth only those limitations that enjoy some medical support in the record. Further, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p.

## VI.
## CONCLUSION

For the reasons set forth above, the undersigned recommends that this matter be reversed and remanded back to the Commissioner for further consideration.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint be **GRANTED IN PART** and that this matter be reversed and remanded to the Commissioner for further consideration consistent with this report. [Doc. 1]; [Doc. 15].

**IT IS FURTHER RECOMMENDED** that, on remand, the ALJ re-evaluate the opinion Plaintiff's treating psychologist, Dr. Kosuri, in a manner consistent with this Report and Recommendation;

**IT IS FURTHER RECOMMENDED** that, on remand, the ALJ re-assess Plaintiff's RFC in a manner consistent with this Report and Recommendation.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of

time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this <u>6th</u> day of March, 2012.

_____/s/ Nannette A. Baker_____

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE
